UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Integra
Bank, N.A.,

    Plaintiff,

v.                                                              Case No.  6:12-mc-108-ORL-31TBS

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff FDIC-Receiver's Motion for Disclosure of Grand Jury Materials and Memorandum of Legal Authority.  (Doc. 1). For the following reasons, I recommend that the motion be granted.

I.    Background

Plaintiff is the plaintiff in an action against Defendant, currently pending in the Southern District of Indiana, Civil Action No. 3:11-cv-00019-RLY-WGH (the "Suit for Indemnification").[1]  The object of the Suit for Indemnification is to require the Defendant to indemnify Plaintiff for losses incurred as the result of eight allegedly fraudulent and dishonest loans orchestrated by an Integra Bank, N.A. loan officer named Stuart Harrington.  (¶ 2).

All of the loans were made at the behest of Louis J. Pearlman.  (Id.)  In June, 2007, a grand jury convened in the Middle District of Florida returned a criminal

---

[1] Unless another source is indicated, all facts in this Order are taken from Plaintiff's motion (Doc. 1).

indictment against Pearlman charging him with participation in an elaborate scheme to defraud FDIC insured financial institutions, including Integra.  (¶ 4).  The indictment was filed in this Court under case number 6:07-cr-00097-18DAB.  (Id.)  As part of the criminal scheme, Harrington, Pearlman and others submitted fraudulent financial statements, tax returns and other fraudulent information to Integra to obtain loans on behalf of Pearlman and his related companies.  (¶ 8).  Pearlman pled guilty in the criminal case and is currently serving a 25 year sentence in Federal prison.  (¶ 14).

Integra deposed Pearlman, who testified that Harrington had to have known the financial information Pearlman and his related companies submitted to Integra as part of the loan underwriting process was misleading and false.  (¶ 9).  Pearlman also testified that Harrington likely received payments from Pearlman's associates to ensure that Integra accepted the misleading and false information.  (¶ 10).  Harrington's bank records show deposits in excess of his regular income which corroborate Pearlman's testimony.  (Id.)  Integra also deposed Harrington who asserted his Fifth Amendment right against self-incrimination and refused to answer questions concerning his employment, involvement with Pearlman, and involvement with Pearlman's associates and related companies.   (¶ 11).

Plaintiff maintains that evidence collected during the Middle District of Florida grand jury investigation is necessary to further corroborate Pearlman's testimony and clarify bank records obtained by Plaintiff.  (¶ 12).  In an effort to trace funds deposited into Harrington's account, Plaintiff has attempted to subpoena records for the period 1997 through 2000 from other banks.  (Id.)  Each bank which has received a

subpoena has informed Plaintiff that it no longer maintains the records Plaintiff seeks. (Id.)  Because the grand jury did its work several years ago, Plaintiff believes it may have obtained the bank records Plaintiff is pursuing.  (Id.)  Plaintiff also believes the grand jury may have obtained correspondence between Harrington, Pearlman and Pearlman's associates that will provide additional evidence of Harrington's knowing involvement in the scheme.   (¶ 13).

Plaintiff is requesting "all grand jury materials relating to Harrington's relationship with Pearlman and Harrington's knowledge of or involvement in Pearlman's scheme, both before and after Harrington left Integra Bank, including all bank records related to Harrington, Pearlman, Pearlman's entities, and Pearlman's associates." All parties to the Suit for Indemnification and the United States Attorney for the Middle District of Florida have received notice of this proceeding.  (Doc. 3).  No papers in opposition to Plaintiff's motion have been filed.  (Docket).  However, counsel for Plaintiff reports that the United States Attorney's Office in the Middle District of Florida takes the position that grand jury materials cannot be disclosed without a court order.  (Doc. 1, ¶ 15).

II.     Discussion

The traditional reasons for maintaining the veil of secrecy over grand jury proceedings are: "(1) to prevent potential defendants from fleeing; (2) to guarantee the grand jury's freedom in its deliberations; (3) to prevent subordination of perjury or tampering with witnesses; and (4) to encourage free input and disclosure of information to the grand jury; and (5) to protect the lives and reputations of innocent

persons who are exonerated by the grand jury investigations. In re Grand Jury Investigation, Venfuel, 510 F.Supp. 1047, 1052-53 (M.D. Fla. ) (citing Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399-400 (1959)).

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) provides that the Court "may authorize disclosure-at a time, in a manner, and subject to any other conditions that it directs-of a grand jury matter: preliminarily to or in connection with a judicial proceeding."  In Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the Supreme Court explained:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only the material so needed.  Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations, as it had in [Dennis v. United States, 384 U.S. 855].  For in considering the effects of disclosure on grand jury operations, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible side effect upon the functioning of future grand juries.

Once a grand jury proceeding is completed, the need for secrecy is diminished because the policies underlying secrecy are less relevant. Douglas Oil, 441 U.S. at 222.   Here, it appears that the grand jury has completed its work because Pearlman has been indicted, convicted and sentenced and the United States Attorney has not voiced any reason why the motion should be denied.

Plaintiff seeks grand jury materials in part, because Harrington has exercised his Fifth Amendment right against self-incrimination.  Courts have found that "[a]lthough disclosure of grand jury transcripts over later assertions of the fifth

-4-

amendment is not as common as disclosure based on subsequent memory failures, courts have held that such fifth amendment assertions do justify disclosure." In re Corrugated Container Antitrust Litigation v. St. Joe Container Co., 687 F.2d 52, 57 (5th Cir. 1982).

Plaintiff has satisfied the notice requirements of Rule 6(F).  In addition, Plaintiff, as the party requesting disclosure of grand jury information under Rule 6 must demonstrate a compelling or particularized need for the information it seeks. Lafayette County, Mississippi v. Total Plan Services, Inc.,2009 WL 3823184 *1 (N.D. Miss.); and In re Grand Jury Investigation, Ven-Fuel, 510 F.Supp. at 1052.  Plaintiff has attempted to obtain the bank records from other sources and Harrington and Pearlman were both deposed before this motion was filed.  Thus, it appears that Plaintiff has made a good faith effort to obtain the information from other sources before bringing this motion.  Plaintiff has also limited its request to information that is relevant to the Suit for Indemnification.

Because Pearlman's criminal case has been concluded and he is currently serving a 25 year sentence, disclosure of grand jury information will not result in Pearlman fleeing, there is no investigation of him to be impeded, there are no witnesses in the criminal case to be bribed or obstructed, and it is less likely that an innocent person will suffer injury to his reputation.  In re Grand Jury, 583 F.2d 128, 130-31 (5th Cir. 1978).[2]  I am also unaware of any specific reason why the disclosure

---

[2] The Court of Appeals for the Eleventh Circuit has held itself bound by pre-1981 Fifth Circuit precedent.  Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

of the requested information would adversely impact the functioning of any current or future grand jury. These factors weigh in favor of granting Plaintiff's motion.

It can reasonably be assumed that the documents Plaintiff seeks were obtained by the grand jury from third parties pursuant to subpoenas and search warrants. Plaintiff is interested in this information for its intrinsic value and not to learn what took place before the grand jury. I find that this information is relevant to the search for truth in the Suit for Indemnification and that the need for disclosure outweighs the need for continued grand jury secrecy.

Plaintiff also seeks other, unidentified grand jury materials which relate to Harrington's relationship with Pearlman and Harrington's knowledge of and involvement in Pearlman's schemes. This may include testimony presented to the grand jury which, if disclosed, would reveal some of what took place in the grand jury room. Nevertheless, Plaintiff has shown a compelling need for this information and the request is limited in scope. Therefore, I also find that Plaintiff's need for the disclosure of this other information outweighs the need for continued grand jury secrecy.

III.     Recommendation

For these reasons, I respectfully recommend that the Court GRANT Plaintiff FDIC-Receiver's Motion for Disclosure of Grand Jury Materials and Memorandum of Legal Authority and permit Plaintiff to inspect and copy grand jury materials in and concerning Middle District of Florida Case 6:07-cr-00097-18DAB, which relate to Harrington's relationship with Pearlman and Harrington's knowledge of or involvement

in Pearlman's scheme to obtain fraudulent and dishonest loans from Integra. This information includes any bank records evidencing payments, or the lack of payments, made by Pearlman, Pearlman's entities, and Pearlman's associates to Harrington.

Failure to file written objections to the proposed fndings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 17, 2012.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel for Plaintiff
    United States Attorney, Middle District of Florida